[Cite as *State v. Nieves*, 2016-Ohio-5090.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | | C.A. No.    15CA010763 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MANUEL NIEVES | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No.    04CR065988 |

DECISION AND JOURNAL ENTRY

Dated: July 25, 2016

MOORE, Presiding Judge.

{¶1}    Defendant, Manuel Nieves, appeals from the judgment of the Lorain County Court of Common Pleas.  We reverse and remand this matter for further proceedings consistent with this decision.

I.

{¶2}    The facts of this case were set forth in a previous appeal, as follows:

Late in the evening of August 14, 2004, Sam "Freddie" Walls, his girlfriend Angela Taylor, and their young child were watching a movie in their home. Angela's two other children were asleep upstairs.  After dozing off, Ms. Taylor was awakened by the sound of two masked men, armed with a sawed-off shotgun, who were beating Mr. Walls, and asking him for money and drugs.  The three victims were detained as the men robbed Ms. Taylor.  The masked gunman forced Mr. Walls to another room and shot him.  Both masked men fled.  Mr. Walls died shortly thereafter.  As a result of their investigation, the police determined that Manuel Nieves was the masked gunman who shot and killed Mr. Walls during the home invasion.

*State v. Nieves*, 9th Dist. Lorain No. 08CA009500, 2009-Ohio-6374, ¶ 2.  Mr. Nieves was indicted on numerous charges stemming from this incident.  At the conclusion of a trial before a

three-judge panel, the trial court found Mr. Nieves guilty of murder, aggravated burglary, kidnapping, aggravated robbery and other charges, and imposed an aggregate sentence of thirty-five years to life imprisonment. *Id.* at ¶ 8. Mr. Nieves appealed from his conviction, arguing, in part, that his conviction was against the manifest weight of the evidence. He maintained that the evidence indicated that it was a man named Angel Vargas, and not Mr. Nieves, who was involved in the crimes. *Id.* at ¶ 12. In discussing Mr. Nieves' challenge to the weight of the evidence, this Court stated:

* * *

> [Mr.] Nieves' second theory in support of his argument that the evidence indicates Angel Vargas' involvement in the crimes instead of his own is that "forensic evidence could have linked Angel Vargas to the Walls murder; however, the potential evidence was ignored during the underlying investigation." It is true that the police did not collect samples from Angel Vargas for purposes of DNA testing or to test for the presence of gunshot residue on his hands.

> There was evidence that the man who wielded the sawed-off shotgun which killed Mr. Walls wore gloves. The police recovered gloves during the course of their investigation. Various witnesses testified that [Mr.] Nieves was wearing gloves prior to the incident. Melissa Zielaskiewicz, a forensic scientist in the forensic biology DNA section of the Bureau of Criminal Identification and Investigation ("BCI"), testified that she tested blood found on those gloves. She testified that there were two blood profiles on the gloves, specifically, a major profile consistent with the victim's DNA, and a minor profile consistent with [Mr.] Nieves' DNA. She testified that there were no other DNA profiles on the gloves.

* * *

*Id.* at ¶ 14-15. This Court overruled Mr. Nieves' challenge to the weight of the evidence, together with his other assignments of error, and we affirmed Mr. Nieves' convictions. *Id.* at ¶ 53.

{¶3} On December 16, 2014, Mr. Nieves filed an application seeking to have "[a] pair of batting gloves used in the commission of the crimes, shoes and clothing from the crime[]" tested for DNA. On January 5, 2015, the trial court issued an order providing that the State

would have until January 30, 2015, to respond to Mr. Nieves' application. On March 3, 2015, Mr. Nieves filed a motion to proceed to judgment on the basis that the State had not responded to the application. Thereafter, on March 6, 2015, the trial court issued an order stating that, upon the State's oral motion, the State was granted until March 9, 2015, to file a response to Mr. Nieves' application. The State then filed its response on March 9, 2015. On March 13, 2015, the trial court issued an order denying Mr. Nieves' application. Mr. Nieves timely appealed from the trial court's denial of his application, and he now presents two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

TRIAL COURT ERRED WHEN IT DENIED [MR. NIEVES'] MOTION FOR DNA TESTING IN VIOLATION OF THE RIGHT TO DUE PROCESS CONTAINED IN THE OHIO AND U.S. CONSTITUTIONS AS [MR. NIEVES] IS INNOCENT OF THE CRIMES FOR WHICH HE HAS BEEN CONVICTED[.]

{¶4} In his first assignment of error, Mr. Nieves argues that the trial court erred in denying his application for DNA testing.

{¶5} R.C. 2953.72(A) provides that "[a]ny eligible offender who wishes to request DNA testing under sections 2953.71 to 2953.81 of the Revised Code shall submit an application for the testing to the court of common pleas specified in section 2953.73 of the Revised Code, on a form prescribed by the attorney general for this purpose." "If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code and a prior definitive DNA test has been conducted regarding the same biological evidence that the offender seeks to have tested, the court shall reject the offender's application. * * *." R.C. 2953.74(A). However, if the prior DNA test was inconclusive, "the court shall review the application and has the

discretion, on a case-by-case basis, to either accept or reject the application." R.C. 2953.74(A). However, if no DNA test was taken at the trial stage, or if such a test was taken but was inconclusive, the court may accept the application if the criteria contained in R.C. 2953.74(B) and (C) are met. *See* R.C. 2953.74(B), (C). One of the criteria for the court to accept the application is that "if DNA testing is conducted and an exclusion result is obtained, the results of the testing will be outcome determinative regarding that offender." R.C. 2953.74(C)(5).

{¶6} Here, in Mr. Nieves' most recent application for DNA testing, he requested testing on "[a] pair of batting gloves used in the commission of the crimes, shoes and clothing from the crime." In his explanation of why a DNA test would have changed the outcome of his case, Mr. Nieves maintained that further DNA testing on these items would demonstrate that "the mixture of DNA contained [Mr.] Vargas' DNA."

{¶7} In its order, the trial court held:

> [Mr.] Nieves has requested DNA testing of the batting gloves and other articles of clothing. It is undisputed that [Mr.] Nieves had definitive DNA testing of the gloves that he now seeks to have re-tested. Those DNA results were inclusive as to [Mr.] Nieves. Specifically, he was identified as the contributor of the major profile. Therefore, [Mr.] Nieves is precluded from having the same biological sample re-tested because the results were inclusive. R.C.[ ]2954.74(A); [*State v.*] *Thomas*, [2d Dist. Montgomery No. 23544, 2010-Ohio-3534, ¶ 17]. As [Mr.] Nieves had prior conclusive DNA testing including him as a contributor to the blood evidence, this court is required by R.C. 2953.74(A) to deny his application for DNA testing. Further, a defendant is not entitled to an order requiring that the "alternative suspects" submit a biological sample suitable for DNA testing. *State v. Caulley*, [10th Dist. Franklin No. 09AP-172,] 2009-Ohio-5801, ¶ 20. Therefore, [Mr.] Nieves is not entitled to obtain a sample of Angel Vargas' DNA for testing.

> The Court finds that [Mr. Nieves] has failed to meet the requirements of R.C.[ ]2953.74 for post-conviction DNA testing. Defendant's application for re-testing of the same biological sample is denied.

{¶8} Accordingly, the trial court, although finding that no further testing *on the batting gloves* was permitted because the previous tests were definitive, did not clearly identify its basis

for denying the application *as to the shoes and other clothing*. This Court has recognized that R.C. 2953.73(D) provides, in relevant part:

> If an eligible inmate submits an application for DNA testing under division (A) of this section, the court shall make the determination as to whether the application should be accepted or rejected. * * * The court shall make the determination in accordance with the criteria and procedures set forth in sections 2953.74 to 2953.81 of the Revised Code * * *. Upon making its determination, the court shall enter a judgment and order that either accepts or rejects the application and *that includes within the judgment and order the reasons for the acceptance or rejection as applied to the criteria and procedures set forth in sections 2953.71 to 2953.81 of the Revised Code*.

(Emphasis added.) *State v. Hickman*, 9th Dist. Summit No. 22279, 2005-Ohio-472, ¶ 5. In *Hickman*, we held that where the trial court issues an order accepting or rejecting an application for DNA testing, but does not set forth its reasons for doing so, the order does not constitute a final appealable order. *See id.* at ¶ 8-10, citing *State v. Mapson*, 1 Ohio St.3d 217, 218-219 (1982). In *Hickman*, the trial court's order merely stated that "[u]pon due consideration of this Court, IT IS HEREBY ORDERED that the Defendant's Motion is DENIED[,]" and we concluded that the trial court's order was not final. *Id.* at ¶ 3, 10. However, unlike *Hickman*, here the trial court set forth various reasons for the denial of the application, but it related none of those reasons directly to the request for DNA testing of the shoes and clothing. Accordingly, although we conclude that the trial court's order is final, as it does set forth reasons for the denial, we cannot discern which of these reasons constitutes the trial court's rationale for rejecting DNA testing of the shoes and clothing "as applied to the criteria and procedures set forth in sections 2953.71 to 2953.81 of the Revised Code." R.C. 2953.73(D). Accordingly, we remand this case to the trial court to clarify its basis as to the rejection of the application for DNA testing of the shoes and clothing as applied to the criteria and procedures set forth in R.C. 2953.71 to R.C. 2953.81. *See State v. Smith*, 8th Dist. Cuyahoga No. 87937, 2007-Ohio-2369, ¶

6

5, 10 (where trial court concluded that applicant had failed to demonstrate that DNA testing would be outcome determinative as defined by R.C. 2953.71(L), but provided no further explanation, appellate court held that it had jurisdiction to remand the matter to the trial court for further explanation).

## ASSIGNMENT OF ERROR II

TRIAL COURT ERRED TO [MR. NIEVES'] PREJUDICE WHEN HE ALLOWED THE STATE TO RESPOND TO HIS MOTION FOR DNA TESTING WELL PAST THE COURT'S IMPOSED DEADLINE AFTER [MR. NIEVES] FILED A MOTION TO PROCEED TO JUDGMENT SHOWING BIAS TO THE FAVOR OF THE STATE[.]

{¶9}    In his second assignment of error, Mr. Nieves argues that the trial court erred by extending the time for the State to respond to his application for DNA testing.  Because we are remanding this matter to the trial court for clarification of its order, we conclude that our review of Mr. Nieves' second assignment of error is premature, and we decline to address it.

III.

{¶10}    Mr. Nieves' first assignment of error is sustained.  Our review of Mr. Nieves' second assignment of error is premature, and we decline to address it.  The judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
CARLA MOORE
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

MANUEL NIEVES, pro se, Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.