[Cite as *State v. Smith*, 2016-Ohio-5668.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


STATE OF OHIO,                                    :

      Plaintiff-Appellee,                    :

                                 :

  - vs -                                              :

                                   :

JOSHUA L. SMITH,                                 :

      Defendant-Appellant.                 :

CASE NO. CA2015-12-024

O P I N I O N
9/6/2016


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 06CRI-00027


Jess Weade, Fayette County Prosecuting Attorney, John M. Scott, Jr., 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Joshua L. Smith, #A527-017, Chillicothe Correctional Institution, P.O. Box 5500, Chillicothe, Ohio 45601, defendant-appellant, pro se


**M. POWELL, P.J.**

{¶ 1}  Defendant-appellant, Joshua Smith, appeals a decision of the Fayette County Court of Common Pleas denying his motion for a new trial and his application for postconviction DNA testing.

{¶ 2}  In the early morning hours of January 1, 2006, the Washington Court House Police Department received a call from appellant who reported he had witnessed the murder

of Michelle Morrison. After investigating appellant's report further, the police discovered Morrison's lifeless body in the bedroom of a now vacant home, a home in which appellant had lived two months earlier before it sustained fire damage.

{¶ 3} Later that same morning, while being questioned by police, appellant claimed J.M., a former friend and current Chillicothe resident, got into an argument with Morrison and hit her on the head with a PVC pipe while the trio was walking from a local bar. Upon investigating appellant's claim further, the police discovered that J.M. was not in Washington Court House that morning. Thereafter, following a police investigation, appellant was arrested and indicted for the murder of Morrison.

{¶ 4} A jury trial was held in July 2006. At trial, appellant testified that his original statement to police implicating J.M. in Morrison's murder was false. Instead, appellant testified he left the bar with Morrison that night, but that after she had walked ahead of him, he saw her attacked and beaten by two men smoking crack cocaine in an alley behind his former residence. After seeing Morrison attacked, appellant became scared, ran into the vacant home, and hid in a small furnace room. Thereafter, while appellant hid in the furnace room, the two men dragged Morrison inside the house and hit her with a PVC pipe. Although he claimed to know one of the men who attacked Morrison, appellant refused to identify the attacker because he felt threatened and believed that his family was in danger.

{¶ 5} Phillip Henry testified on behalf of the state. Henry testified he was an acquaintance of appellant who had previously played pool with him at a bar. Henry further testified that while serving time for DUI and a probation violation, he was placed in a four-man cell with appellant, who, at the time, was awaiting trial. The other two cellmates were Jeremy Hudson and Mike Wagner. After Henry was placed in the cell with appellant, the two began to talk and appellant asked Henry to be a witness for his defense and "to say that [he] was [working] on the bar that night." Appellant told Henry that he almost confessed

to Morrison's murder and that "it took every bit of his life not to just fold and fumble right there" when looking at pictures of her body, and that calling the police to report he was a witness to Morrison's murder was the "biggest mistake he ever made in his life." Henry testified that over a period of time in the cell, appellant confessed to Morrison's murder.

{¶ 6} On July 14, 2006, the jury found appellant guilty of murder. That same day, the trial court sentenced appellant to a mandatory prison term of 15 years to life. Appellant appealed his conviction. In January 2009, we affirmed appellant's conviction. *State v. Smith*, 12th Dist. Fayette No. CA2006-08-030, 2009-Ohio-197.

{¶ 7} In 2013, appellant filed an application for DNA testing and an amended application in 2014. Appellant also filed a motion for a new trial, arguing ineffective assistance of trial counsel and *Brady* violations by the state pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). On December 7, 2015, the trial court denied appellant's motion for a new trial and his applications for postconviction DNA testing.

{¶ 8} Appellant now appeals, raising four assignments of error. The first and second assignments of error will be addressed together.

{¶ 9} Assignment of Error No. 1:

{¶ 10} TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO INVESTIGATE AND SUBPOENE WITNESSES IN VIOLATION OF THE 6TH AND 14TH AMENDMENT RIGHTS TO THE UNITED STAT. [sic]

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE CUMMLATIVE EFECT OF COUNSEL NOT INVESTIGATING AND/OR SUBPOENA WITNESSES DENIED THE DEFENDANT A FAILR TRIAL IN VIOLATION OF HIS 6TH AND 14TH AMENDMENT RIGHTS TO THE UNITED STATES CONSTITUTION. [sic]

{¶ 13} Appellant argues he received ineffective assistance of counsel because his

trial counsel failed to investigate and subpoena three former cellmates of appellant, including Jeremy Hudson and Mike Wagner. Appellant asserts that the testimony of these cellmates would have established he was innocent of Morrison's murder and that Henry fabricated his story. We find that appellant's claim is barred by the doctrine of res judicata.

{¶ 14} Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. *State v. Szefcyk*, 77 Ohio St.3d 93, 96 (1996); *State v. Hicks*, 12th Dist. Butler No. CA2004-07-170, 2005-Ohio-1237, ¶ 10. Appellant's ineffective assistance of counsel claim raises both an issue he raised in his direct appeal and which we rejected (failure to investigate appellant's cellmates), and an issue that could have been raised on direct appeal (failure to subpoena appellant's cellmates). Appellant is consequently barred by res judicata from raising these issues. *See State v. Chamberlain*, 12th Dist. Brown No. CA2015-03-008, 2015-Ohio-2987.

{¶ 15} Appellant's first and second assignments of error are overruled.

{¶ 16} Assignment of Error No. 3:

{¶ 17} THE STATE'S FAILURE TO TURN OVER STATEMENT'S TO THE DEFENSE WAS IN VIOLATION OF CRIM.R. 16 AND BRADY V. MARYLAND, AND VIOLATED THE DEFENDANT'S 6TH AND 14TH AMENDMENT RIGHTS TO THE UNITED STATES CONSTITUTION. [sic]

{¶ 18} Appellant argues the state improperly withheld favorable evidence from the defense in violation of the United States Supreme Court's opinion in *Brady*, 373 U.S. 83. Specifically, appellant asserts the state failed to turn over to him statements from Grace Armstrong, Melody Reid, and Gregory Haddox. In their statements, all three witnesses

- 4 -

stated they saw Morrison in the company of an African-American man on the night she was murdered. Appellant obtained the statements pursuant to a public records request.

{¶ 19} "The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *State v. Johnston*, 39 Ohio St.3d 48 (1988), paragraph four of the syllabus, citing *Brady*. Evidence is material under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Johnston* at paragraph five of the syllabus. "*Brady* and its progeny apply only to evidence unknown to the defendant at the time of the trial." *State v. Cummings*, 12th Dist. Butler No. CA2006-09-224, 2007-Ohio-4970, ¶ 40.

{¶ 20} In order to establish a *Brady* violation, a defendant must show that (1) the evidence at issue was favorable to him because it was either exculpatory or impeaching; (2) the evidence was suppressed by the state, either willfully or inadvertently; and (3) prejudice ensued. *State v. Widmer*, 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, ¶ 91, citing *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936 (1999). The *Brady* test is stringent. *State v. Jackson*, 57 Ohio St.3d 29, 33 (1991). The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. *State v. Fulton*, 12th Dist. Clermont No. CA2002-10-085, 2003-Ohio-5432, ¶ 33, citing *United States v. Agurs*, 427 U.S. 97, 109-110, 96 S.Ct. 2393 (1976).

{¶ 21} In their statements, Armstrong and Haddox both state that on the night of the murder, Morrison gave them a ride from Eddy's Bar to My Place Bar, a young African-American man rode with them, Morrison dropped off Armstrong and Haddox at My Place

and then left, with the African-American man in the car with her, and that this was the last time Armstrong and Haddox saw Morrison. While Armstrong's statement does not provide a timeline as to the events, Haddox's statement provides that he last saw Morrison at 11:30 p.m. on December 31, 2005. In her statement, Reid states that on the night of the murder, Morrison was at Eddy's around 11 p.m. on December 31, 2005, left the bar with Armstrong and Haddox, came back to Eddy's around 11:45 p.m., left the bar again, and came back to Eddy's at 12:30 a.m. Reid last saw Morrison around 1:45 a.m. Reid also stated that an African-American man "was hitting" on one of her friends during one of the times Morrison was gone from Eddy's, and that Morrison told Reid and her friend that "the black male told her he wanted a blow job and she said no and went on."

{¶ 22} Upon reviewing the record, we find that the state's failure to provide the statements from Armstrong, Reid, and Haddox to appellant did not violate *Brady* because the statements were not material to appellant's guilt or punishment and there is no reasonable probability that the outcome of appellant's trial would have been different had the statements been provided to appellant.

{¶ 23} Whether in his initial interview by the police or during his trial testimony, appellant's statements indicate he was with Morrison at the scene of the crime after he and Morrison both left Eddy's shortly before 2 a.m. on January 1, 2006. At trial, appellant testified that his original statement to police implicating J.M. in Morrison's murder was false. Appellant then testified he was with Morrison shortly before her murder and that she was murdered by two men smoking crack cocaine in an alley behind his former residence. By contrast, the witness statements all place Morrison at an earlier time on the night of the murder, either at Eddy's or in her car, and do not corroborate appellant's trial testimony with regard to the circumstances of Morrison's murder. None of the witnesses had any firsthand knowledge regarding the murder, nor do they support appellant's theory that he witnessed

two men, whom he refused to identify and whom he never described as being African-American, kill Morrison.

{¶ 24} We also note that while the witness statements were never given to appellant, the names of the witnesses and a summary of their statements were provided to appellant in February 2006 as part of the state's response to appellant's discovery request. Specifically, the names of the witnesses and a summary of their statements were included in notes from the Washington Court House Police Department which were part of the state's discovery package. The summary of the witness statements indicates that at Eddy's on the night of the murder, (1) Haddox talked to Morrison before he left the bar around 11:30 p.m. on December 31, 2005, (2) Armstrong saw Morrison talk with an African-American man who was looking for sex, (3) Morrison left and returned to the bar several times that night, (4) according to Reid, an African-American man was trying to make sexual advances toward Morrison, and (5) the last time Reid saw Morrison at the bar was around 2 a.m. on January 1, 2006. The names of the witnesses and a cursory description of their statements were also listed in a separate document included in the discovery package.[1]

{¶ 25} In light of the foregoing, we find that the state did not suppress evidence that was material either to appellant's guilt or punishment, and as such, there was no *Brady* violation.[2]

{¶ 26} Appellant's third assignment of error is overruled.

{¶ 27} Assignment of Error No. 4:

{¶ 28} THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING THE

---

1. That document states that all three witnesses were at the bar, that both Armstrong and Haddox "pu[t] vic at bar & B/M," and that Reid "puts vic at bar."

2. To the extent appellant asserts, without arguing, that the state's withholding of the statements violated Crim.R. 16, we find that our determination there was no *Brady* violation resolves this assertion in favor of the state, as well. *State v. Cummings*, 12th Dist. Butler No. CA2006-09-224, 2007-Ohio-4970, ¶ 42 (state's failure to disclose exculpatory evidence in violation of *Brady* and former Crim.R. 16[B][1][f]).

APPELLANT'S DNA PETITION IN VIOLATION OF R.C. 2953.71/2953.81, AND HIS 6TH AND 14TH AMENDMENT RIGHTS TO THE OHIO AND UNITED STATES CONSTITUTION.

{¶ 29} Appellant argues the trial court erred in denying his application for postconviction DNA testing because the trial court did not comply with the requirements of R.C. 2953.73(D).

{¶ 30} R.C. 2953.71 through 2953.81 govern postconviction DNA testing for eligible inmates. R.C. 2953.73(A) provides that an eligible inmate who wants to request DNA testing pursuant to R.C. 2953.71 to 2953.81, must submit an application for DNA testing to the common pleas court that sentenced the inmate for the relevant offense. R.C. 2953.73(D) requires the trial court to "enter a judgment and order that either accepts or rejects the application and that includes within the judgment and order the reasons for the acceptance or rejection as applied to the criteria and procedures set forth in [R.C.] 2953.71 to 2953.81[.]" *State v. Curtis*, 12th Dist. Brown No. CA2014-10-019, 2015-Ohio-2460, ¶ 17. The statute only requires that the trial court provide the reasons for its decision. *Id.*; *State v. Galloway*, 10th Dist. Franklin No. 07AP-611, 2008-Ohio-3470, ¶ 14.

{¶ 31} The trial court provided three reasons for denying appellant's application for postconviction DNA testing: (1) the application was "untimely;" (2) the application "could have been raised by [appellant] in his original appeal;" and (3) "there is no substantive authority which requires such testing under the circumstances disclosed by the record."

{¶ 32} Although the trial court provided reasons for denying appellant's application for DNA testing, we find that we must remand the case to the trial court because we are unable to assess the appropriateness of the trial court's denial of the application.

{¶ 33} The trial court first denied the application on the ground it was untimely. However, there are no timeliness requirements under R.C. 2953.72 through 2953.74 as to

when an inmate must file an application for DNA testing. In addition, timeliness is not among the statutory criteria for acceptance or rejection of an application for postconviction DNA testing, and we have not found any case law recognizing or sanctioning timeliness as a criteria.

{¶ 34} The trial court next denied the application on the ground it could have been raised by appellant in his original appeal. However, R.C. 2953.71 et seq. specifically governs postconviction DNA testing for eligible inmates. Appellant filed his application for DNA testing pursuant to R.C. 2953.71 et seq. Accordingly, it is unclear, and the trial court does not clarify, how appellant could have raised on direct appeal the DNA testing he now seeks.

{¶ 35} Finally, the trial court denied the application because "there is no substantive authority which requires such testing under the circumstances disclosed by the record." Because the trial court's statement is vague and conclusory and does not cite any statutory provision in support, we find we are unable to discern what the trial court means. It may be that this reason relates to specific criteria under R.C. 2953.74 and a finding that an exclusion result, when considered in conjunction with the trial record and the defense theories presented at trial, would not be outcome determinative. However, for this court to so find based solely upon the trial court's foregoing phrase would be speculation on our part. *See State v. Mapson*, 1 Ohio St.3d 217 (failure of a trial court to make the required statutory findings precludes a postconviction relief petitioner from making a reasoned appeal and prevents any meaningful judicial review by an appellate court); *State v. Hickman*, 9th Dist. Summit No. 22279, 2005-Ohio-472 (finding that the policy considerations enunciated in *Mapson* apply to a criminal defendant's application for postconviction DNA testing, as well as to petitions for other postconviction remedies).

{¶ 36} Accordingly, because we are unable to review the trial court's decision, we

reverse the trial court's judgment entry denying the application for DNA testing and remand this case to the trial court to clarify its basis with regard to the rejection of the application as applied to the criteria and procedures set forth in R.C. 2953.71 to 2953.81. *See State v. Smith*, 8th Dist. Cuyahoga No. 87937, 2007-Ohio-2369; *State v. Nieves*, 9th Dist. Lorain No. 15CA010763, 2016-Ohio-5090.[3]

{¶ 37} Appellant's fourth assignment of error is sustained.

{¶ 38} Judgment affirmed in part and reversed in part, and cause remanded to the trial court.

S. POWELL, J., concurs.

PIPER, J., concurs in part and dissents in part.

**PIPER, J., concurring in part and dissenting in part.**

{¶ 39} While concurring in the resolution of the first, second, and third assignments of error, I must respectfully dissent in reversing and remanding on the fourth assignment of error. For the foregoing reasons, I would affirm on the fourth assignment of error as well.

{¶ 40} The majority determines that the trial court abused its discretion in stating its reasons for denying appellant's postconviction DNA testing request, because the majority is "unable to discern what the trial court means." On the other hand, I find the trial court's reasons for denying the application clearly mean that the trial court found R.C. 2953.74 to

---

3. We note that several appellate districts have held that when a trial court's judgment entry fails to set forth *any* reasons for dismissing an inmate's application for DNA testing, the judgment is not a final appealable order and the appeal must be dismissed as a result. *See, e.g., State v. Newell*, 8th Dist. Cuyahoga No. 85280, 2005-Ohio-2853 (no final appealable order where the trial court failed to set forth any reasons for rejecting application for DNA testing); *State v. Hickman*, 9th Dist. Summit No. 22279, 2005-Ohio-472 (same). Such is not the case here. Because the trial court's judgment entry set forth reasons for the denial of the application of the DNA testing, albeit insufficient or improper reasons, the trial court's entry is final and we have jurisdiction to remand this case to the trial court for clarification. *See State v. Smith*, 8th Dist. Cuyahoga No. 87937, 2007-Ohio-2369; *State v. Nieves*, 9th Dist. Lorain No. 15CA010763, 2016-Ohio-5090.

be inapplicable to the circumstances as raised by appellant.

**{¶ 41}** The trial court stated three independent reasons for denying appellant's application for postconviction DNA testing pursuant to R.C. 2953.71 et seq. (1) the request for DNA testing was "untimely," (2) issues pertaining to DNA testing "could have been raised by [appellant] in his original appeal," and (3) the application for DNA testing was supported by "no substantive authority which requires such testing under the circumstances disclosed by the record."

**{¶ 42}** As we stated in *Curtis*, unless the appellant establishes the criteria set forth in R.C. 2953.74(B) and (C), the trial court is statutorily precluded from accepting a postconviction application for DNA testing. 12th Dist. Brown No. CA2014-10-019, 2015-Ohio-2460, citing *State v. Buehler*, 113 Ohio St.3d 114, 2007-Ohio-1246, ¶ 40. *See also* S*tate v. Carter*, 10th Dist. Franklin No. 07AP-323, 2007-Ohio-6858, ¶ 17. The three reasons given by the trial court reveal that appellant did not establish the necessary criteria for ordering postconviction DNA testing.

**{¶ 43}** One of the reasons in *Curtis* for denying the postconviction DNA testing request was the trial court's reasoning that at the time of Curtis' trial, DNA testing was generally accepted and the results of DNA testing were generally admissible in evidence. 2015-Ohio-2460 at ¶ 13. This same reasoning is applicable here, which is what the trial court indicated when stating the application for postconviction DNA testing was "untimely."

**{¶ 44}** At the time of appellant's trial, DNA testing was generally accepted and the results of DNA testing were generally admissible in evidence.[4] In other words, appellant cannot establish the criteria in R.C. 2953.74(B)(1) that at the time of his trial "* * * DNA testing was not generally accepted, the results of DNA testing were not generally admissible

---

4. The murder occurred on January 1, 2006.

evidence, or DNA testing was not yet available." Therefore, the trial court was precluded from granting appellant's request for postconviction DNA testing and was also correct in its reasoning that appellant's application pursuant to R.C. 2953.74 was "untimely."

{¶ 45} Appellant clearly attempts to misapply the statutes authorizing postconviction DNA testing. In his case, DNA testing, or the lack of DNA use, should have been an issue raised in his direct appeal. During an initial interview with the police and at trial, appellant stated he was with the homicide victim at the scene close in time to her murder. Therefore, the presence of his DNA would not be unexpected. Similar to our determination in *Curtis*, "the presence of another person's DNA would not exonerate appellant, nor would the DNA establish the time that the DNA was placed on [the particular object to be tested]." 2015-Ohio-2460 at ¶ 14. At the time of appellant's trial herein, DNA evidence could have been tested and any issue regarding its existence, or use, should have been raised during his "original appeal" as stated by the trial court.

{¶ 46} Due to appellant's application, the trial court examined appellant's request in the context of the record as well as the criteria in R.C. 2953.71 thru 2953.81. After its review, the trial court was correct in its reasoning that "there is no substantive authority which requires such testing under the circumstances disclosed by the record." Again, because appellant could not establish his burden of meeting the criteria established in R.C. 2953.74(B) and (C), the trial court was precluded from granting appellant's application. The statutes pertaining to postconviction DNA testing simply are not applicable to the scenario in appellant's case.

{¶ 47} The majority's reliance upon *State v. Hickman*, 9th Dist. Summit No. 22279, 2005-Ohio-472, is misguided. In *Hickman*, the trial court gave *no* reasons for denying the application for postconviction DNA testing. While the majority reverses for an abuse of discretion in denying appellant's application, the trial court sub judice *did* give "reasons" as

required by R.C. 2953.73(D). The majority cites no Ohio precedent that determines the reasons given by the trial court herein are unreasonable, arbitrary, capricious, or otherwise contrary to law. Nor does the majority cite any statutory provision which the trial court violated. The majority desires more detail from the trial court, but that alone does not support a finding that the trial court abused its discretion.

{¶ 48} Again, similar to *Curtis*, "[a]lthough a more complete explanation might be preferable, the statute does not require it." 2015-Ohio-2460 at ¶ 18, citing *State v. Galloway*, 10th Dist. Franklin No. 07AP-611, 2008-Ohio-3470 at ¶ 16. While the majority may prefer that the trial court clarify a factual basis for its reasons, R.C. 2953.73(D) does not require such. In view of the facts contained herein, I can find no basis for finding the trial court abused its discretion. With the record before us, the trial court was precluded from ordering postconviction DNA testing. The trial court's statement that there is no authority which requires DNA testing in appellant's scenario, is absolutely correct. I would thus affirm the trial court's ruling.