[Cite as *State v. Bell*, 2022-Ohio-3453.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29361 |
| | : | |
| v. | : | Trial Court Case No. 2007-CR-802 |
| | : | |
| DIAHNTAE BELL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of September, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

DIAHNTAE BELL, Inmate No. A565-818, London Correctional Institution, P.O. Box 69, London, Ohio 43140
    Defendant-Appellant, Pro Se

. . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Defendant-appellant Diahntae Bell appeals from a decision of the Montgomery County Court of Common Pleas overruling his application for postconviction DNA testing.   For the reasons set forth below, the judgment of the trial court is affirmed.

## I.  Facts and Procedural History

**{¶ 2}** We set forth the history of the case in *State v. Bell*, 2d Dist. Montgomery No. 22448, 2009-Ohio-4783 ("*Bell I*"), as follows:

> On February 27, 2007, Cassandra Graves and Quiana Lott were residents of an apartment located at 5157 Embassy Place in Harrison Township.   On that date, they noticed Bell coming out of an apartment located next door at 5155 Embassy Place.   That apartment was being rented by Graves's sister, Donitta Harvey, who was in prison at that time. Graves and her brother Deangelo Epps were watching Harvey's apartment while she was in prison, and they had a key to the apartment.   Bell was carrying a DVD player identified as belonging to Harvey.   When Bell was confronted by Graves and Lott he claimed that he had permission to enter the apartment.   He ultimately relinquished the DVD player and went to another apartment located at 5151 Embassy Place.   Graves called the police to report Bell. When the police arrived, Bell had left the scene.

> Almost two hours later, Bell returned to the apartment complex where he was observed pacing back and forth behind the apartments.   Bell

confronted the residents of 5157 and claimed that he had no reason to steal the DVD player. At that time, Lott became nervous, telephoned her brother Diamond Washington, and asked him to come over. At one point, Bell went back to the apartment located at 5151 and told the occupants, Lamicah Helton and Lamond Chambers, that he had left his keys in 5155. Both Helton and Chambers approached the residents of 5157, seeking to gain access to 5155 in order to look for the keys; their requests were refused. Thereafter, Bell again confronted the residents of 5157 and asked them to look for his keys. At that point, Larue Bailey, another resident of 5157, had returned to the apartment. He and Washington went over to 5155 to look for the keys, but did not find them.

After Washington and Bailey went back inside 5157, Bell attempted to enter 5155 through the kitchen window. He was stopped by Washington and Bailey. Washington and Bell began to "tussle," and a gun was pulled out. As the men fought, Bell was shot in the hand and thereupon dropped the gun. Washington kicked the gun over to Bailey, who was later observed holding the gun at his side, pointed downward. At some point, the fight ended, with Washington returning inside to 5157. Bell was then observed walking back to the truck and retrieving a gun. Thereafter, he was observed shooting Bailey.

Following the shooting, Bell ran back and entered Helton's apartment, but immediately exited through the front door. Helton and

Chambers took their children and left the apartment complex in a vehicle. The police responded to the scene. Bailey was transported to the hospital, where he was pronounced dead. Approximately fifteen minutes after the shooting, police received information that Bell was inside an apartment located at 5148 Northcutt Place, a short distance from Embassy Place. Bell was apprehended. A few days later, the handgun used to kill Bailey was found in a trash can in Trotwood. No fingerprints were obtained from the gun.

Bell was indicted on six counts, as follows: Count One-Felony Murder; Count Two-Murder; Count Three-Felonious Assault; Count Four-Burglary; Count Five-Burglary; and Count Six-Having a Weapon Under a Disability. With the exception of the Burglary charge in Count Four of the indictment, all of the charges carried firearm specifications. Following a jury trial, Bell was convicted on Counts One, Four, Five and Six. The trial court sentenced Bell to a prison term of twenty-three years to life.

(Footnote omitted.)   *Id.* at ¶ 4-8.

{¶ 3} Bell filed a direct appeal in which he asserted that (1) the conviction was not supported by the evidence; (2) the indictment was deficient; (3) counsel was ineffective; and (4) the trial court erred in sentencing. We affirmed the trial court's judgment on September 11, 2009. *Bell I*, 2d Dist. Montgomery No. 22448, 2009-Ohio-4783. We denied Bell's subsequent applications to reconsider and to reopen his direct appeal. In May 2011, Bell filed a motion for resentencing. We affirmed the trial court's denial of that

motion. *State v. Bell*, 2d Dist. Montgomery No. 24783, 2012-Ohio-3491 (*Bell II*). In January 2013, Bell filed a petition to vacate his conviction and sentence, in which he claimed that trial counsel had failed to inform him of a plea offer. We affirmed the trial court's decision overruling the petition on the basis that it was untimely. *State v. Bell*, 2d Dist. Montgomery No. 25729, 2014-Ohio-49 ("*Bell III*").

{¶ 4} This appeal involves the trial court's denial of Bell's July 26, 2021 application for DNA testing. In the application, Bell sought testing of "the 38 caliber, the 45 Taurus, the screen door & number 11." He also sought testing of the clothing he and the victim wore at the time of the offense. The State opposed the motion. The trial court denied the motion on December 28, 2021.

{¶ 5} Bell appeals pro se.

## II.    The Trial Court's Compliance with R.C. 2953.73(D)

{¶ 6} We begin our analysis with Bell's second assignment of error, which states:

THE TRIAL COURT ERRED WHEN IT FAILED TO EXPLAIN THE REASON FOR ITS DECISION.

{¶ 7} Bell contends the trial court did not set forth an explanation for its decision denying his application. He asks that we remand the case in order for the court to set forth its reasoning.

{¶ 8} R.C. 2953.73(D) states that, when ruling upon an application for DNA testing, "the court shall enter a judgment and order that either accepts or rejects the application and that includes within the judgment and order the reasons for the acceptance or

rejection as applied to the criteria and procedures set forth in sections 2953.71 to 2953.81 of the Revised Code." Thus, the statute prevents a trial court from merely issuing a general judgment in favor of a party.

{¶ 9} In this case, the trial court's judgment entry stated, in pertinent part:

After considering the Defendant's Application for DNA Testing[,] the State's Memorandum Contra, and the Reply filed by Defendant, the Court hereby adopts the argument and reasoning set forth by the State in its Memorandum Contra and denies the Defendant's Application for DNA testing.

{¶ 10} Ordinarily, we would fault Bell for failing to file a Civ.R. 52 motion for findings of fact and conclusions of law, and we would presume the regularity of the trial court's proceedings. *See Yocum v. Means*, 2d Dist. Darke No. 1576, 2002-Ohio-3803, ¶ 7. However, given the clear mandate of R.C. 2953.73(D) requiring a trial court to set forth its reasoning, we cannot say that burden belonged to Bell. In any event, the purpose of Civ.R. 52 is to permit a reviewing court to determine whether the contents of the trial court's opinion, "when considered together with other parts of the record, form an adequate basis upon which to decide the narrow legal issues presented." *Brandon/Wiant Co. v. Teamor*, 135 Ohio App.3d 417, 423, 734 N.E.2d 425 (8th Dist.1999). In other words, the purpose of issuing findings of fact and conclusions of law is to establish a record that permits us to conduct a meaningful review.

{¶ 11} Here, while the trial court did not technically comply with R.C. 2953.73(D), it did refer to and adopt the State's reasoning as set forth in its memorandum opposing

Bell's application. A review of that memorandum reveals that the State's argument was based upon factors which we will discuss below in our resolution of Bell's first assignment of error. Further, the memorandum permits us to conduct a meaningful review of the record because it sets forth a sufficient basis for denying Bell's application as applied to the criteria and procedures set forth in R.C. 2953.71 to 2953.81. Thus, although the better practice would be for the trial court to set forth its own basis for judgment, we conclude that the decision in this case does not require us to remand for findings of fact or conclusions of law.

{¶ 12} Accordingly, Bell's second assignment of error is overruled.

### III. Trial Court's Decision

{¶ 13} Bell's first assignment of error states as follows:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S APPLICATION

FOR DNA TESTING.

{¶ 14} Bell contends that the trial court should have granted his application for DNA testing.

{¶ 15} Post-conviction DNA testing is governed by R.C. Chapter 2953. "The trial court may 'accept' an eligible inmate's application for DNA testing only if the following factors are present: (1) biological material was collected from the crime scene or the victim(s), and the parent sample of that biological material still exists; (2) the parent sample of the biological material is sufficient, demonstrably uncorrupted, and scientifically suitable for testing; (3) the identity of the perpetrator of the charged offense was an issue

at the inmate's trial; (4) a defense theory at trial was such that it would permit a conclusion that an 'exclusion result would be outcome determinative;' and (5) 'if DNA testing is conducted and an exclusion result is obtained, the results of the testing would be outcome determinative.' " *State v. Emerick*, 170 Ohio App.3d 647, 2007-Ohio-1334, 868 N.E.2d 742, ¶ 15 (2d Dist.); R.C. 2953.74(C). "If any of the factors listed in R.C. 2953.74(C) is not satisfied, the court is precluded from accepting the application." *Id.* at ¶ 16.

{¶ 16} In this case, Bell's application focused on his claim that DNA testing would be outcome determinative because it would exclude him as the person who shot Bailey.

{¶ 17} The term "exclusion result" means a DNA test result "that scientifically precludes or forecloses the subject offender as a contributor of biological material recovered from the crime scene or victim in question, in relation to the offense for which the offender is an eligible offender[.]" R.C. 2953.71(G). "Outcome determinative" means "that had the results of DNA testing of the subject offender been presented at the trial of the subject offender requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the offender is an eligible offender and is requesting the DNA testing, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case * * *, there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense[.]" R.C. 2953.71(L).

{¶ 18} A trial court has discretion to accept or reject an application for DNA testing. R.C. 2953.74(A). Thus, absent an abuse of discretion, we will not reverse the decision of the trial court. An abuse of discretion occurs when the trial court's decision is

unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An application for postconviction DNA testing is properly denied where the results would not be outcome determinative. *State v. Buehler*, 113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E.2d 1246, ¶ 37.

{¶ 19} Bell sought to have six items tested, including "the screen door." The shooting took place at an apartment complex. As pointed out by the State, there was evidence presented that Bell was at apartments 5151, 5155 and 5157 at some point leading up to or immediately following the shooting. All three apartments had screen doors. Bell admitted to the police that he had been in the area at the time of the shooting. There is no evidence to demonstrate which of those doors he touched, if any, and Bell failed to specify which of those doors he wished to have tested for DNA. Also, Bell failed to state, and we cannot discern, how DNA testing of a screen door would be outcome determinative as to the question of whether he shot Bailey. Further, although Bell intimates that the resident of one of the apartments may have been the person who actually shot Bailey, the fact that the resident's DNA might have been found on a screen door in an apartment complex in which he lived would not lead to a finding that the resident shot Bailey. Thus, the trial court did not err in rejecting this portion of the application.

{¶ 20} Next, Bell asked that testing be performed on both his and Bailey's clothing. In support, he argued that the jury would have acquitted him had it known there was no gun powder on the clothing. Thus, it appears he sought to have gun powder residue testing, rather than DNA testing, of the clothing. However, residue testing is not

contemplated by or provided for in the DNA testing statutes. Further, Bell made no assertions as to how DNA testing on the clothing would be outcome determinative, and we discern no basis for such a finding. Therefore, we find no error in the trial court's decision to reject this portion of the application.

{¶ 21} Bell also sought DNA testing of the "number 11" and the .38 caliber weapon found at the scene. With regard to the "number 11," Bell fails to identify what this evidence consists of or how it would render outcome determinative results. Likewise, there is nothing in Bell's application to support a finding that DNA testing of the .38 caliber weapon would be relevant, as that gun was not the murder weapon. We conclude the trial court did not err in denying testing on this basis.

{¶ 22} Finally, Bell argued that DNA testing of the evidence would establish that the State was not able to link him to the .45 Taurus gun used to kill Bailey. In support, Bell claimed that, because he was bleeding profusely from his hand after being shot, had he been the person who shot Bailey, his blood and DNA would have necessarily been found on the murder weapon. Thus, he contends that the failure to find his blood and DNA on the murder weapon would be outcome determinative. He further contends that the recovery of third-party DNA on the murder weapon would be outcome-determinative in establishing that he was not the perpetrator.

{¶ 23} DNA testing was not performed on the gun before trial. The gun was tested for blood, but no blood was found on it. The evidence demonstrated that the gun was located three days after Bailey was shot, in an outdoor trashcan behind a residence. The State's expert witness provided unrebutted testimony that the elements, or even the trash

in the can, could have removed any traces of blood from the weapon.

{¶ 24} Even if Bell's DNA were not found on the gun, we cannot say that that finding would be outcome determinative. First, there is no evidence that Bell touched the gun with his injured hand. Further, given the testimony of the State's expert that leaving a gun exposed to the elements and trash could eliminate traces of blood and the testimony of the eyewitness who identified Bell as the shooter, a reasonable jury could still have found him guilty of the charges set forth in the indictment based upon the testimony of the State's witnesses. The mere fact that someone else's DNA might be found on the gun would not be outcome determinative, given that the gun was not located for three days and was left in a trashcan where others could have touched it.

{¶ 25} Based upon our review of the trial court record, we conclude that the trial court did not err in denying Bell's application for DNA testing as there is no support for his claim that such testing would be outcome determinative. Accordingly, the first assignment of error is overruled.


## IV. Conclusion

{¶ 26} Both of Bell's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .


EPLEY, J. and LEWIS, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Diahntae Bell
Hon. Mary E. Montgomery