[Cite as *State v. Bell*, 2023-Ohio-3813.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29779 |
| | : | |
| v. | : | Trial Court Case No. 2007 CR 00802 |
| | : | |
| DIAHNTAE BELL | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 20, 2023

. . . . . . . . . . .

DIAHNTAE BELL, Pro Se Appellant

MATHIAS H. HECK, JR., by RICKY L. MURRAY, Attorney for Appellee

. . . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Diahntae Bell appeals from an order of the Montgomery County Court of Common Pleas denying his most recent application for post-conviction DNA testing. For the reasons that follow, we will affirm the judgment of the trial court.

    I.      Facts and Course of Proceedings

**{¶ 2}** We have set forth the history of the case several times in previous appeals filed by Bell. We will repeat some of these facts here to provide necessary context.

**{¶ 3}** On February 27, 2007, residents of an apartment located at 5157 Embassy Place in Harrison Township noticed Bell coming out of apartment 5155 next door, which was being rented by an individual who was in prison at that time. Bell was carrying a DVD player from that apartment. Two of the residents of apartment 5157 confronted Bell, who claimed that he had permission to enter the apartment. One of the residents called the police to report Bell. When the police arrived, Bell had left the scene.

**{¶ 4}** Almost two hours later, Bell returned to the apartment complex and confronted two of the residents of apartment 5157. One of the residents became nervous, telephoned her brother, Diamond Washington, and asked him to come over. Bell again confronted the residents of apartment 5157 and asked them to look for his keys, which he believed he had left in apartment 5155. At that point, a third resident of apartment 5157, Larue Bailey, had returned to the apartment. Bailey and Washington went to apartment 5155 to look for Bell's keys but did not find them.

**{¶ 5}** Bell then attempted to enter apartment 5155 through the kitchen window. He was stopped by Washington and Bailey. Washington and Bell began to "tussle," and a gun was pulled out. As the men fought, Bell was shot in the hand and dropped the gun. Washington kicked the gun over to Bailey, who was later observed holding the gun at his side, pointed downward. At some point, the fight ended, with Washington returning to apartment 5157. Bell was then observed walking to a truck and retrieving a gun. Thereafter, he was observed shooting Bailey.

**{¶ 6}** The police responded to the scene. Bailey was transported to the hospital, where he was pronounced dead. Approximately 15 minutes after the shooting, police received information that Bell was inside an apartment located at 5148 Northcutt Place, a short distance from Embassy Place. The police arrested Bell. A few days later, the handgun used to kill Bailey was found in a trash can in Trotwood. No fingerprints were obtained from the gun.

**{¶ 7}** Bell was indicted on multiple counts and was found guilty by a jury of one count of murder, two counts of burglary, and one count of having a weapon under disability. Bell was sentenced to a prison term of 23 years to life.

**{¶ 8}** On July 26, 2021, Bell filed a pro se application for DNA testing. In the application, Bell sought testing of "the 38 caliber, the 45 Taurus, the screen door & number 11." He also sought testing of the clothing he and the victim had worn at the time of the shooting. The State opposed the application. The trial court denied the application on December 28, 2021. We affirmed the trial court's denial of Bell's application for post-conviction DNA testing. We concluded that "the trial court did not err in denying Bell's application for DNA testing as there is no support for his claim that such testing would be outcome determinative." *State v. Bell*, 2d Dist. Montgomery No. 29361, 2022-Ohio-3453, ¶ 25.

**{¶ 9}** On February 27, 2023, Bell filed a second pro se application for post-conviction DNA testing. This time, Bell sought testing of "(4) 45 shell casings. (4) 38 shell casings/cartridges inside the 38. The shell casings/cartridges inside the 45 Taurus magazine. (1) 9 millimeter shell casing. The bullet or bullets from the victim body. 45

Taurus magazine with cartridges in it."

{¶ 10} In the section of the application that requested an explanation of why the DNA test "would have changed the outcome of his case," Bell wrote:

Due to developments in Mini-STR or Touch DNA testing that greatly increased the type of evidence that can now be tested for DNA profiles, these items had not been tested for DNA or fingerprints during investigation. DNA testing and an upload to CODIS. The testing of the shell casing collected at the crime scene for DNA, the development of DNA profiles from such evidence, and the upload of any profiles developed to CODIS. ATTACHED IS [sic] TWO Incident reports. One is from Antonio Gay the prosecuting attorney witness stating on 2-27-07 witness Diamond Washington place [sic] a revolver above Larve Bailey kitchen cabinets. At which time he said "I ONLY GOT FOUR SHOTS. I GOT TO MAKE THEM COUNT." The second incident report from Detective Jay A. Vitali, when I was transported from 5148 Northcutt pl. with a defensive wound to my left hand & RN Julie House. She ask [sic] me what happen [sic] & I told her dude pulled out a gun on me & I grabbed it & she ask [sic] why did I do that, at which time I stated because it was the safest thing to do! She ask [sic] me how did I get shot in the hand. I told her he shot me but I was still holding on to the gun! The prosecuting Attorneys Sandra Hobson & Elizabeth Scott trying to make it look like & seem like Detective Jay A. Vitali was never there. "Will prove I am innocent" "PLEASE TEST ALL OF

THESE ITEMS"

{¶ 11} The State filed a memorandum opposing Bell's application for DNA testing. The State argued that Bell's application should be denied because (1) R.C. 2953.72(A)(7) required rejection of the application due to Bell's failure in the previous application to satisfy the acceptance criteria in R.C. 2953.74; (2) Bell failed to satisfy all three requirements outlined in R.C. 2953.74(B)(1), because DNA testing was readily available at the time of trial; and (3) Bell failed to explain how DNA testing would be outcome determinative in his case.

{¶ 12} On April 18, 2023, the trial court denied Bell's application for post-conviction DNA testing "for the reasons set forth in the State's Memorandum." Bell filed a timely notice of appeal.

II.     The Trial Court's Failure to Include Findings of Fact and Conclusions of Law Does Not Prevent a Meaningful Review of the Trial Court's Decision

{¶ 13} Bell's second and third assignments of error are interrelated and will be discussed together. These two assignments of error state:

THE TRIAL COURT ERRED WHEN IT FAILED TO EXPLAIN THE REASON FOR ITS DECISION.

THE TRIAL COURT ERRED WHEN IT FAILED TO GIVE FINDINGS OF FACTS AND CONCLUSIONS OF LAW.

{¶ 14} In these assignments of errors, Bell takes issue with the trial court's failure to state in its decision the specific reasons why it was denying Bell's application. The

trial court's judgment entry stated, in pertinent part:

> Turning to the most recent Application for DNA Testing, the court has considered the Defendant's Application as well as the Memorandum Contra filed by the State of Ohio. The Court finds the Memorandum Contra well-taken and for the reasons set forth in the State's Memorandum, the Court hereby DENIES the Defendant's Application for DNA Testing.

April 18, 2023 Decision, p. 1.

{¶ 15} R.C. 2953.73(D) states that, when ruling upon an application for DNA testing, "the court shall enter a judgment and order that either accepts or rejects the application and that includes within the judgment and order the reasons for the acceptance or rejection as applied to the criteria and procedures set forth in sections 2953.71 to 2953.81 of the Revised Code." Thus, the statute requires a trial court to do more than merely issue a general judgment in favor of a party.

{¶ 16} We addressed a similar argument in Bell's most recent appeal. There, we stated:

> Ordinarily, we would fault Bell for failing to file a Civ.R. 52 motion for findings of fact and conclusions of law, and we would presume the regularity of the trial court's proceedings. * * * However, given the clear mandate of R.C. 2953.73(D) requiring a trial court to set forth its reasoning, we cannot say that burden belonged to Bell. In any event, the purpose of Civ.R. 52 is to permit a reviewing court to determine whether the contents of the trial court's opinion, "when considered together with other parts of the record,

form an adequate basis upon which to decide the narrow legal issues presented." * * * In other words, the purpose of issuing findings of fact and conclusions of law is to establish a record that permits us to conduct a meaningful review.

Here, while the trial court did not technically comply with R.C. 2953.73(D), it did refer to and adopt the State's reasoning as set forth in its memorandum opposing Bell's application. A review of that memorandum reveals that the State's argument was based upon factors which we will discuss below in our resolution of Bell's first assignment of error. Further, the memorandum permits us to conduct a meaningful review of the record because it sets forth a sufficient basis for denying Bell's application as applied to the criteria and procedures set forth in R.C. 2953.71 to 2953.81. Thus, although the better practice would be for the trial court to set forth its own basis for judgment, we conclude that the decision in this case does not require us to remand for findings of fact or conclusions of law.

*Bell*, 2d Dist. Montgomery No. 29361, 2022-Ohio-3453, at ¶ 10-11.

{¶ 17} This reasoning equally applies to the present appeal. Although the trial court's decision to cite generically "the reasons set forth in the State's Memorandum," without providing any independent analysis of its own, was less than ideal, we can conduct a meaningful review of the issue. Therefore, there is no need to remand the matter to the trial court to issue findings of fact and conclusions of law.

{¶ 18} The second and third assignments of error are overruled.

III.     The Trial Court Properly Denied Bell's Application for Post-Conviction DNA Testing

{¶ 19} Bell's first assignment of error states:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S APPLICATION FOR DNA TESTING.

{¶ 20} Post-conviction DNA testing is governed by R.C. Chapter 2953. A trial court has discretion to accept or reject an application for DNA testing. R.C. 2953.74(A). Thus, absent an abuse of discretion, we will not reverse the decision of the trial court. An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 21} A statutory limitation on the trial court's discretion to accept a post-conviction application for DNA testing is contained in R.C. 2953.72(A)(7), which provides, in part:

Along with the application, the eligible offender shall submit an acknowledgment that is on a form prescribed by the attorney general for this purpose and that is signed by the offender. The acknowledgment shall set forth all of the following: * * * (7) That, if the court rejects an eligible offender's application for DNA testing because the offender does not satisfy the acceptance criteria described in division (A)(4) of this section, the court will not accept or consider subsequent applications[.]

{¶ 22} Further, R.C. 2953.72(A)(4) provides "[t]hat the state has established a set of criteria set forth in section 2953.74 of the Revised Code by which eligible offender applications for DNA testing will be screened and that a judge of a court of common pleas upon receipt of a properly filed application and accompanying acknowledgment will apply those criteria to determine whether to accept or reject the application." In turn, R.C. 2953.74(C) provides the criteria referenced in R.C. 2953.72(A)(4) that must be met before the trial court may accept the eligible offender's application for DNA testing. One of those criteria is: "The court determines that, if DNA testing is conducted and an exclusion result is obtained, the results of the testing will be outcome determinative regarding that offender." R.C. 2953.74(C)(5).

{¶ 23} One of the three bases on which the State relied in arguing that the trial court must reject Bell's second application for DNA testing involved this interplay between R.C. 2953.72(A)(4) and (7) and R.C. 2953.74(C). According to the State, once the trial court found that Bell had failed to meet at least one of the criteria in R.C. 2953.74(C) in his first application for DNA testing, R.C. 2953.72(A)(7) then required the trial court to deny his second application for DNA testing. We agree.

{¶ 24} In *State v. Long*, 1st Dist. Hamilton No. C-180541, 2019-Ohio-4857, the defendant filed an application for post-conviction DNA testing in 2010. The trial court rejected the application, because it found that a DNA test result excluding the defendant as a source of the blood would not have been outcome determinative. The First District affirmed that judgment. The defendant then filed a 2018 application for DNA testing. The trial court again rejected the application. On appeal, the First District noted that

"[t]he Ohio Supreme Court has read R.C. 2953.72(A)(7) to 'bar[ ]' a subsequent application if a previous application was rejected for failure to satisfy the R.C. 2953.74 acceptance criteria." *Long* at ¶ 10, citing *State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095 (2013). The First District then concluded, "[b]ecause the 2010 application did not satisfy the R.C. 2953.74(C)(5) acceptance criterion, R.C. 2953.72(A)(7) barred the common pleas court from considering or accepting the 2018 application. Therefore, the court properly declined to do so." *Long* at ¶ 11.

{¶ 25} We are faced with the same scenario here. Bell's previous application for post-conviction DNA testing was denied, because he failed to satisfy the R.C. 2953.74(C)(5) acceptance criterion that the DNA results would be outcome determinative. Therefore, R.C. 2953.72(A)(7) required the trial court to deny Bell's subsequent application for post-conviction DNA testing.

{¶ 26} The first assignment of error is overruled.

IV. Conclusion

{¶ 27} Having overruled all of Bell's assignments of error, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.