[Cite as *State v. Bell*, 2024-Ohio-5342.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30133 |
| | : | |
| v. | : | Trial Court Case No. 2007 CR 00802 |
| | : | |
| DIAHNTAE BELL | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 8, 2024

. . . . . . . . . . .

DIAHNTAE BELL, Pro Se Appellant

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

. . . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Defendant-Appellant Diahntae Bell appeals from an order of the Montgomery

County Court of Common Pleas denying his latest application for post-conviction DNA testing. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.    Facts and Procedural History

{¶ 2} The following facts are from our most recent decision in this case, *State v. Bell*, 2023-Ohio-3813 (2d Dist.) (*Bell II*).

{¶ 3} On February 27, 2007, residents of an apartment located at 5157 Embassy Place in Harrison Township noticed Bell coming out of apartment 5155 next door, which was being rented by an individual who was in prison at that time. Bell was carrying a DVD player from that apartment. Two of the residents of apartment 5157 confronted Bell, who claimed that he had permission to enter the apartment. One of the residents called the police. When they arrived, Bell had left the scene.

{¶ 4} Almost two hours later, Bell returned to the apartment complex and confronted the residents of apartment 5157. One of them got nervous, telephoned her brother, Diamond Washington, and asked him to come over. Bell again confronted the residents of apartment 5157 and asked them to look for his keys, which he believed he had left in apartment 5155. At that point, a third resident of apartment 5157, Larue Bailey, had returned to the apartment. Bailey and Washington went to apartment 5155 to look for Bell's keys but did not find them.

{¶ 5} Bell then attempted to enter apartment 5155 through the kitchen window. He was stopped by Washington and Bailey. Washington and Bell began to "tussle," and a gun was pulled out. As the men fought, Bell was shot in the hand and dropped the gun. Washington kicked the gun over to Bailey, who was later observed holding the gun at his

side, pointed downward. At some point, the fight ended, and Washington returned to apartment 5157. Bell then retrieved a gun and shot Bailey.

{¶ 6} The police responded to the scene. Bailey was transported to the hospital, where he was pronounced dead. Approximately 15 minutes after the shooting, police received information that Bell was inside an apartment located on Northcutt Place, a short distance from the crime scene. The police arrested Bell. A few days later, the handgun used to kill Bailey was found in a trash can in Trotwood. No fingerprints were obtained from the gun.

{¶ 7} Bell was indicted on multiple counts and was found guilty by a jury of one count of murder, two counts of burglary, and one count of having a weapon under disability. He was sentenced to 23 years to life in prison.

{¶ 8} On July 26, 2021, Bell filed a pro se application for DNA testing. The application sought testing of "the 38 caliber, the 45 Taurus, the screen door & number 11." He also wanted testing of the clothing he and the victim had worn at the time of the shooting. The State opposed the application, and the trial court denied the application on December 28, 2021. We affirmed the trial court's denial, concluding that "the trial court did not err in denying Bell's application for DNA testing as there is no support for his claim that such testing would be outcome determinative." *State v. Bell*, 2022-Ohio-3453, ¶ 25 (2d Dist.) (*Bell I*).

{¶ 9} On February 27, 2023, Bell filed a second pro se application for post-conviction DNA testing. This time, he sought testing of "(4) 45 shell casings. (4) 38 shell casings/cartridges inside the 38. The shell casings/cartridges inside the 45 Taurus

magazine. (1) 9 millimeter shell casing. The bullet or bullets from the victim body. 45 Taurus magazine with cartridges in it." We affirmed the trial court's denial of the application, reasoning that the court had been required to deny Bell's application because he previously had failed to satisfy the criteria that the DNA results would have been outcome determinative. *Bell II*.

{¶ 10} On February 21, 2024, Bell filed a third application for DNA testing. This time, he requested the testing of: .45 Taurus handgun; .45 Taurus magazine; four shell casings/cartridges left at the scene; shell casing/cartridge inside the chamber of the Taurus handgun; all of the victim's clothing; projectile collected from the body; lead bullet recovered from the storm door; lead fragment from DP&L meter; 9 millimeter Ruger casing; two live 45 caliber rounds; Motorola cell phone; .38 Rossi handgun; and .38 Rossi shell casing. According to his application, Bell believed that testing these items would exonerate him and "show who handled the gun." As it had done previously, the trial court denied the request, adopting the State's argument that Bell could not satisfy statutory requirements outlined in R.C. 2953.71 through 2953.81, especially because Bell could not establish that the DNA testing would be outcome determinative.

{¶ 11} Bell has filed a timely appeal with three assignments of error.

## II.      **Final Appealable Order**

{¶ 12} In his first assignment of error, Bell contends that the trial court erred when it did not issue a final appealable order. He believes that it was not enough for the trial court to simply adopt the State's reasoning in its decision to deny his DNA testing request, but instead should have cited specific "statutes that set forth grounds accepting or

rejecting" the application.

{¶ 13} R.C. 2953.73(D) explains what a trial court must do after it has determined whether it will accept or deny an inmate's post-conviction DNA testing request. "Upon making its determination, the court shall enter a judgment and order that either accepts or rejects the application and that includes within the judgment and order the reasons for the acceptance or rejection as applied to the criteria and procedures set forth in sections 2953.71 to 2953.81 of the Revised Code."

{¶ 14} In addressing the mandate that a trial court must provide "reasons for the acceptance or rejection" of the application for DNA testing, courts in Ohio have noted a difference between entries that provide no reasons for denying an application and entries that provide insufficient reasons. When a trial court provides no reason for denying an application for DNA testing in its entry, Ohio courts of appeals have found no jurisdiction to review the matter because there was no final appealable order. *See State v. Long*, 2011-Ohio-6381 (1st Dist.) (judgment entry stated the "motion" was "not well taken," therefore the entry did not conform with R.C. 2953.73(D)'s requirement that it include the court's reasons for the rejection); *State v. Nieves*, 2016-Ohio-5090 (9th Dist.); *State v. Bunch*, 2014-Ohio-4921 (7th Dist.) (judgment entry stated "Defendant's Pro-se 'Application for DNA Testing' is overruled," finding the trial court offered no reasons to support its decision to deny the testing); *State v. Lemons*, 2010-Ohio-1445 (11th Dist.) (entry failed to provide "any reasons for its denial," and thus failed to provide a basis for review): *State v. Newell*, 2005-Ohio-2853 (8th Dist.).

{¶ 15} In contrast to the just-cited cases where the courts gave *no* explanation as

to why the DNA testing applications were denied, in this case, the trial court gave a minimal explanation, but an explanation nonetheless. It stated: "The Court finds the arguments set forth in the State's *Memorandum Contra* to be persuasive and therefore overrules the Defendant's third application for DNA Testing." (Emphasis in original.) April 5, 2024 Decision and Entry.   While the trial court did not do any analysis of its own, and simply adopted a party's arguments as its own, we think the trial court did enough to comply with R.C. 2953.73(D). The State's memorandum, which the court adopted, explained in detail the factual and legal reasons why it believed Bell's application must be rejected. For instance, the memorandum argued that the application should be denied pursuant to R.C. 2953.74(B)(1) because DNA testing was available at the time of Bell's trial and because it would not be outcome determinative. It also contended that Bell's application required denial under R.C. 2953.72(A)(7) because his previous applications for post-conviction DNA testing had been denied. Accordingly (and again noting that simply adopting a party's arguments is not the best practice), we conclude that the April 5, 2024 Decision and Entry was a final appealable order.

{¶ 16} The first assignment of error is overruled.

### III.    Statutory Limitations

{¶ 17} Bell contends in his second assignment of error that R.C. 2953.72(A)(7) does not bar his DNA testing request as the State asserts. He believes that "the absence of [his] DNA and simultaneous presence of unidentified third party's DNA across at least two pieces of evidence would create a strong probability of a different outcome in this case." Appellant's Brief at 6. Based on the statute, however, additional testing is

unavailable.

{¶ 18} According to R.C. 2953.72(A), an eligible offender who wishes to request DNA testing must submit an application for the testing to the court of common pleas on a form prescribed by the attorney general. The offender must submit along with the form a set of 10 acknowledgments, including, as pertinent to this appeal, an acknowledgement that if the court rejects an application for DNA testing because the offender did not satisfy the acceptance criteria described in R.C. 2953.74, the court will not accept or consider subsequent applications. R.C. 2953.72(A)(7).

{¶ 19} This is the second time that we have considered this exact argument from Bell. In *Bell II*, we stated that his previous application for post-conviction DNA testing was denied "because he failed to satisfy the R.C. 2953.74(C)(5) acceptance criterion that the DNA results would be outcome determinative. Therefore, R.C. 2953.72(A)(7) required the trial court to deny Bell's subsequent application for post-conviction DNA testing." *Bell II* at ¶ 25. Because the court had previously found that Bell could not satisfy the criteria set forth in R.C. 2953.74(C)(5), subsequent testing was foreclosed. Further, the statute prohibits future consideration of any application for DNA testing under any circumstances due to Bell's request having previously been denied.

{¶ 20} The second assignment of error is overruled.

### IV.    Outcome Determination

{¶ 21} In his final assignment of error, Bell argues that further DNA testing should be done because if the DNA found on the to-be-tested items "matches the profile of an offender in the CODIS database, such a match would be exonerative as to Mr. Bell."

Appellant's Brief at 13.

**{¶ 22}** First and foremost, R.C. 2953.72(A)(7) bars DNA testing in this and subsequent applications. But even if that were not the case, this Court has previously held that the DNA testing requested by Bell would not be outcome determinative. In *Bell I*, we noted that "[t]he mere fact that some else's DNA might be found on the gun would not be outcome determinative[.]" *Bell I* at ¶ 24. And while he now asks for different items to be tested, the analytical framework is the same: Bell cannot overcome eyewitness testimony identifying him as the shooter or expert testimony concerning evidence and exposure to the elements. The hypothesis that there is *some* possibility that another person's DNA *might* be found on *additional* evidence does not change the fact that Bell was identified as the shooter at trial.

**{¶ 23}** The third assignment of error is overruled.

**V.     Conclusion**

**{¶ 24}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.