[Cite as *State v. Bell*, 2025-Ohio-4873.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30467 |
| Appellee | : | |
| | : | Trial Court Case No. 2007 CR 00802 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| DIAHNTAE BELL | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 24, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

EPLEY, P.J., and HUFFMAN, J., concur.

DIAHNTAE BELL, Appellant, Pro Se
MICHAEL P. ALLEN, Attorney for Appellee

TUCKER, J.

{¶ 1} Defendant-appellant Diahntae Bell appeals from an order of the Montgomery County Court of Common Pleas denying his motion seeking public records. For the reasons that follow, we affirm the trial court's judgment.

## I. Factual and Procedural Background

{¶ 2} The facts of this case have been set forth in six prior appeals filed by Bell. However, because they provide necessary context, we set forth the following facts.

{¶ 3} On February 27, 2007, residents of 5157 Embassy Place in Harrison Township noticed Bell coming out of the apartment next door, 5155 Embassy Place, which was being rented by an individual who was in prison at that time. Bell was carrying a DVD player from the apartment. Two of the residents of apartment 5157 confronted Bell, who claimed that he had permission to enter the apartment. One of the residents called the police to report Bell. When the police arrived, Bell had left the scene.

{¶ 4} Almost two hours later, Bell returned to the apartment complex and confronted two of the residents of apartment 5157. One of the residents became nervous, telephoned her brother, Diamond Washington, and asked him to come over. Bell again confronted the residents of apartment 5157 and asked them to look for his keys, which he believed he had left in apartment 5155. At that point, a third resident of apartment 5157, L.B., had returned to the apartment. L.B. and Washington went to apartment 5155 to look for Bell's keys but did not find them.

**{¶ 5}** Bell then attempted to enter apartment 5155 through the kitchen window. He was stopped by Washington and L.B. Washington and Bell began to "tussle," and a gun was brandished. As the men fought, Bell was shot in the hand and dropped the gun. Washington kicked the gun over to L.B., who was later observed holding the gun at his side, pointed downward. At some point, the fight ended, with Washington returning to apartment 5157. Bell was then seen walking to a truck and retrieving a gun. Bell was next observed shooting L.B.

**{¶ 6}** The police responded to the scene. L.B. was transported to the hospital, where he was pronounced dead. Approximately 15 minutes after the shooting, police received information that Bell was inside an apartment located at 5148 Northcutt Place, a short distance from Embassy Place. The police arrested Bell. A few days later, the handgun used to kill L.B. was found in a trash can in Trotwood. No fingerprints were obtained from the gun.

**{¶ 7}** On October 11, 2007, Bell was indicted on six charges. A jury convicted him on four counts, including felony murder. The trial court sentenced him to a prison term of 23 years to life. Following a direct appeal of his convictions and sentence, this court affirmed the judgment of the trial court. *State v. Bell*, 2009-Ohio-4783 (2d Dist.) ("*Bell I*").

**{¶ 8}** In May 2011, Bell filed a motion for resentencing. We affirmed the trial court's denial of that motion in *State v. Bell*, 2012-Ohio-3491 (2d Dist.) ("*Bell II*"). In 2013, Bell filed a petition to vacate his conviction and sentence. The trial court overruled the petition, and we affirmed. *State v. Bell*, 2014-Ohio-49 (2d Dist.) ("*Bell III*").

**{¶ 9}** In 2021, Bell filed an application for DNA testing of two guns, a screen door, and "number 11." *State v. Bell*, 2022-Ohio-3453, ¶ 4 (2d Dist.) ("*Bell IV*"). He also sought testing of the clothing he and the victim wore at the time of the offense. *Id.* The trial court

3

denied the application, and we affirmed, finding no support for Bell's claim that such testing would be outcome determinative. *Id.* at ¶ 25.

{¶ 10} In February 2023, Bell filed a second application for DNA testing of more items. Specifically, Bell wanted to test shell casings/cartridges from the two guns listed in *Bell IV*, as well as the bullets from the victim's body and the magazine from one of the guns. The application was denied by the trial court. Bell appealed. This court affirmed, concluding that "R.C. 2953.72(A)(7) required the trial court to deny Bell's subsequent application for post-conviction DNA testing." *State v. Bell*, 2023-Ohio-3813, ¶ 25 (2d Dist.) ("*Bell V*").

{¶ 11} In February 2024, Bell filed his third application for DNA testing seeking to include additional items not set forth in his prior applications. Once again, the trial court denied the application. Bell appealed and this court affirmed the decision of the trial court on the basis that successive post-conviction applications for DNA testing are prohibited by statute. *State v. Bell*, 2024-Ohio-5342 (2d Dist.) ("*Bell VI*").

{¶ 12} Turning to this appeal, Bell, in March 2025, filed a pleading entitled "Motion for Public Records Request Pursuant to R.C. 149.43(B)(1), (B)(8)." In the motion, he sought access to (1) "any documents showing if any of the biological material/exculpatory evidence has since been lost or destroyed"; (2) "a complete copy of Detective Jay A. VITALI Dispatch records"; (3) "a complete copy of all 911 tapes [related to the offense]"; and (4) a copy of the prosecutor's investigative file. The trial court overruled the motion concluding that Bell's request for records was made "in support of his pursuit of DNA testing," and given this, he had failed to demonstrate a justiciable claim.

{¶ 13} Bell appeals.

## II.    Public Records

{¶ 14} Bell's assignment of error states:

4

THE TRIAL COURT ERRED IN DENYING APPELLANT'S PUBLIC RECORDS REQUEST.

{¶ 15} R.C. 149.43(B) sets forth procedures governing disclosure of records maintained by a public office. For a person such as Bell who is incarcerated for a criminal conviction and seeking records of a criminal investigation or prosecution, disclosure of public records is limited by R.C. 149.43(B)(8), which states:

A public office or person responsible for public records is not required to permit a person who is incarcerated pursuant to a criminal conviction . . . to obtain a copy of any public record concerning a criminal investigation or prosecution . . . unless the request to inspect or to obtain a copy of the record is for the purpose of acquiring information that is subject to release as a public record under this section and the judge who imposed the sentence or made the adjudication with respect to the person, or the judge's successor in office, finds that the information sought in the public record is necessary to support what appears to be a justiciable claim of the person.

{¶ 16} This statute sets forth "heightened requirements for inmates seeking public records." *State ex rel Ware v. O'Malley*, 2024-Ohio-5242, ¶ 9. It "requires an incarcerated criminal defendant to demonstrate that the information he is seeking pursuant to R.C. 149.43 is necessary to support a justiciable claim or defense." *State v. Gibson*, 2007-Ohio-7161, ¶ 13 (2d Dist.). "A 'justiciable claim' is a claim that is properly brought before a court of justice for relief." *State v. Wilson*, 2011-Ohio-4195, ¶ 9 (2d Dist.). This court has held that a justiciable claim does not exist where an inmate fails to identify "any pending proceeding with respect to which the requested documents would be material." *State v. Atakpu*, 2013-Ohio-4392, ¶ 9 (2d Dist.).

5

**{¶ 17}** We review the trial court's decision regarding a public records request by an incarcerated individual under the abuse of discretion standard. *Atakpu* at ¶ 7. An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary, or unconscionable. *Id.*, quoting *State ex rel. Doe v. Smith*, 2009-Ohio-4149, ¶ 15, quoting *State ex rel. Beacon Journal Publishing Co. v. Akron*, 2004-Ohio-6557, ¶ 59.

**{¶ 18}** Bell's motion sought records for the purported purpose of proving the "prosecutor's misconduct for failing to preserve the exculpatory evidence" and for "failing to turnover [sic] the exculpatory evidence." The "exculpatory evidence" to which he refers includes all the items that he had requested be subject to DNA testing as set forth in *Bell IV*, *Bell V*, and *Bell VI*.

**{¶ 19}** Bell's motion was simply a backdoor attempt, albeit a clumsy one, to obtain the DNA testing that he had previously been denied. The trial court reasonably and correctly concluded that Bell had failed to demonstrate a justiciable claim necessary to support his public records request.

**{¶ 20}** Bell's assignment of error is overruled.

### III.   Conclusion

**{¶ 21}** Bell's assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J., and HUFFMAN, J., concur.